### COLE *vs.* SAVAGE and CHITTENDEN.

Where A. borrowed money at an usurious rate of interest and gave his bond and mortgage for the money loaned and for the usurious premium, and B. the lender, afterwards took a note of A., for a part of the usurious premium for the further forbearance of the usurious loan, which note was also signed by C. as the surety of the borrower, and A. subsequently conveyed the mortgaged premises to C. with warranty; and C. afterwards gave a covenant to the lender to pay the usurious bond and mortgage, and subsequently filed his bill for the purpose of having the several usurious securities delivered up and cancelled; *Held,* that the complainant, who did not ask for a discovery as to the usury, was not bound to offer to pay the amount which was equitably due upon the usurious securities, as a condition to the granting of the relief sought by his bill.

*Held also,* that the covenant given by C. was a cloud upon his title to the mortgaged premises, and that he was entitled to a decree that it be delivered up and cancelled, under the provisions of the act of May, 1837, for the prevention of usury.

The word borrower, as used in the eighth section of the article of the revised statutes relative to the interest of money, and in the sixth section of the act of 1837, for the prevention of usury, is not confined to the person to whom the original loan was made; but it embraces his sureties, heirs, devisees and personal representatives. It also embraces a subsequent grantee of premises subject to a usurious mortgage, who took the premises adverse to the claim of the mortgagee, but who subsequently guaranteed the payment of the bond and mortgage, including the usurious premium for the loan.

A person who purchases the mere equity of redemption in premises upon which there is an usurious mortgage, or who agrees to take the premises from the mortgagor subject to the lien of the mortgage, cannot set up a defence of usury as against such mortgage. Nor can a mere stranger, between whom and the mortgagor there is no privity, set up such a defence.

But the heir of the mortgagor or a devisee, or grantee of mortgaged premises which are subject to the apparent lien of a mortgage which is void for usury, and who holds the premises adverse to the claim of the mortgagee, may set up, as a defence to such claim, that the mortgage is usurious and void.

THIS was an appeal from a decree of the vice chancellor March 5. of the eighth circuit, allowing a general demurrer to the complainant's bill for want of equity. The allegations in the bill were in substance as follows: About the 1st of October, 1834, David S. Cole borrowed of D. M. Chittenden, the defendant's testator, $1700, upon an usurious agreement that for such loan Cole would deliver to him

his bond and mortgage for the sum of $2700, payable in six annual payments, with annual interest, to be paid on the 1st of October in each year; and that if default was made in any of the payments, either of principal or interest, the whole amount of the bond and mortgage should immediately become due. The bond and mortgage were delivered accordingly upon such loan. The first instalment and interest was not paid on the 1st of October, 1835, when it became due. But on the 20th of that month $378 was paid; part of which was applied in payment of the interest of the $2700 for one year, at seven per cent, and the residue was retained by the mortgagee for further forbearance of the $2700; he insisting that the whole amount had become due because the instalment was not paid at the day. About the 1st of Oct. 1836, the mortgagee received from the mortgagor $213 in cash, and a note for $600, signed by John E. Cole, the complainant, as security; the whole of which was retained as a further usurious premium, except the interest for one year at seven per cent, which was endorsed, and $150 which was loaned to D. S. Cole.

In the spring of 1837, D. S. Cole conveyed the mortgaged premises to the complainant, with warranty. And the mortgagor having failed and involved the complainant as his security, and the $600 note signed by the latter as surety to Chittenden not being paid when it became due, in October, 1837, the complainant was called upon to pay such note, and also the interest upon the $2700 bond and mortgage from the 1st of October, 1836. It was thereupon agreed that Chittenden should advance to the complainant $726 and should take his bond and mortgage on other property for $1600; which bond and mortgage were given for the amount so advanced, and for the note and the interest on the $2700 bond and mortgage to the 18th of Oct. 1837, and also included about $32 for extra interest. It was also a part of the same agreement that the complainant should guarantee the payment of the $2700 bond and mortgage in three years, with semi-annual interest; and that if the interest should not be paid as it became due, he should be immediately

liable upon his guaranty, for the payment of the whole $2700 and interest. The complainant gave the $1600 bond and mortgage, and executed the guaranty accordingly ; and he afterwards paid the interest on the $2700 bond and mortgage up to the 18th of October, 1838. Chittenden died in February, 1839 ; and the complainant having previous to that time learned the usurious nature of the $2700 bond and mortgage, ceased to pay the semi-annual interest according to the terms of his guaranty. The defendants, who were the executor and executrix of the deceased mortgagee, thereupon advertised the mortgaged premises for sale under a statute foreclosure of the $2700 mortgage. The complainant then filed his bill against them in this cause, stating the facts as above detailed, and waiving an answer on oath from the defendants. And he prayed for a decree that the $2700 bond and mortgage, and his covenant to guaranty the payment thereof, might be surrendered up and cancelled, and for a perpetual injunction against the statute foreclosure ; and for such further or such other relief as the nature of his case might require, or as should be agreeable to equity. The vice chancellor decided that the complainant was not a borrower, and was not therefore entitled to relief without offering to pay the amount which was justly and equitably due upon the $2700 bond and mortgage. (*See his opinion,* 1 *Clark's Ch. Rep.* 484.)

*M. F. Delano & J. R. Elwood,* for the appellant. The complainant, as vendee of the mortgaged premises, is entitled to file his bill to have the mortgage cancelled. (1 *R. S.* 760, § 5. 10 *John.* 185. 4 *Peters,* 228. 13 *Mass. Rep.* 518.) He is entitled to the relief prayed for in his bill, upon the ground of usury, without paying or offering to pay any part of the interest or principal money secured by the mortgage. (3 *Paige,* 537. 11 *Wend.* 532. *Laws of* 1837, *p.* 487. 1 *R. S.* 760, § 6, 7, 8. 1 *R. L. of* 1813, *p.* 64.) The complainant is a borrower within the meaning of the 8th section of 1 *R. S.* 760, and of the 6th section of *Act of* 1837, *p.* 487. He offers to show the usury by

1844.

Cole
v.
Savage.

proof, and does not ask for a discovery from the defendant. (7 *Paige,*560, 582.) The complainant is at least entitled to have the excess of interest included in the mortgage and actually paid deducted therefrom. (7 *Paige,*417. 1 *John. Ch.* 57.) And he is entitled to have his guaranty of the mortgage set aside. This was executed after the passage of the usury act of 1837. (7 *Paige,* 137. 4 *Id.* 537.) The demurrer being to the whole bill, if bad in part it is bad for the whole. The different causes of complaint stated in the bill arise out of the same transaction ; and the relief founded thereon, which is prayed for, is of the same general character. This is a proper case for a bill with a double aspect, either to cancel the mortgage or to have it reduced. (4 *Paige,* 537. 7 *Id.* 413.)

*S.· Matthews & F. M. Haight,* for the respondents. The complainant, before he can avail himself of the statute of usury, must bring the money actually loaned with interest into court, or offer to pay it. The bill in this cause is defective for the want of an offer to pay the amount which is equitably due. (1 *John. Ch.* 367. 5 *Id.* 122. 11 *Wend.* 330. 1 *R. S.* 761. *Sess. Laws of* 1837, *p.* 487.) The bill cannot be sustained as one with a double aspect. The relief sought by the two cases presented by the bill is different and inconsistent. (*Story on Plead.* 212. 2 *Paige,* 396. 4 *Id.* 537. *Coop. Pl.* 14. 13 *Ves.* 114.) If the bill is to be regarded as a bill to redeem, the amount due should be paid or offered to be paid. The complainant being a purchaser of the equity of redemption merely, cannot be permitted to set up usury in the mortgage. (9 *Mass. Rep.* 45. 13 *Id.* 518. 15 *Id.* 99. 10 *Wheat.* 367. 7 *Paige,* 615. 5 *John. Ch.* 565. 15 *Wend.* 502. 20 *John.* 292. 1 *Sim.* 482.)

THE CHANCELLOR. Taking the allegations in this bill to be true, and for the purpose of deciding the questions arising upon this demurrer they must be presumed to be so, as they are sworn to upon the information and belief of the com-

plainant, this is a most gross and extortionate case of usury ; which usury is not only included in the bond and mortgage itself but also in the guaranty of the complainant, endorsed upon such bond and mortgage in October, 1837. For the guaranty is for the payment of the whole $2700, and interest thereon semi-annually from that time; although, there was less than $800 when such guaranty was given, honestly and equitably due, for the money originally loaned with legal interest thereon, after deducting the several payments which had been made including the $450 of the note signed by the complainant as surety ; the whole of which note is secured in the $1600 mortgage given by the complainant upon other lands.

This being a general demurrer to the whole bill, if the complainant was entitled to any relief whatever, either as to the original bond and mortgage or as to his covenant to pay the $2700 and interest from the 18th of October, 1837, the demurrer should have been overruled.

As a general rule, it is perfectly well settled that the court of chancery will not lend its aid to enforce a penalty or forfeiture, but will leave the complainant to his defence or remedy at law. And in the case of *Mason* v. *Gardiner*, (4 *Bro. C. C.* 436,) the court allowed a demurrer to a bill to have usurious securities delivered up and cancelled, because the complainant, in such bill, had not offered to pay the amount justly due. The same principle was acted on by this court in the case of *Fanning* v. *Dunham*, (5 *John. Ch. Rep.* 122 ;) although the appropriate relief was given in that case, upon pleadings and proofs, as though the usual offer, to pay what was equitably due, had been contained in the bill. In this case, therefore, if the rule of this court was unchanged by the revised statutes, or by the act of May, 1837, to prevent usury, the complainant should have been permitted to amend his bill by inserting therein a formal offer to pay the balance which is justly due, for principal and legal interest on the $1700 actually loaned, after deducting therefrom the several sums which have been received from the original mortgagor, or from the complainant, on account

of such loan, or for usurious premiums. And the order appealed from should be modified to that extent.

The conclusion at which I have arrived, however, is that under the provisions of the revised statutes, as well as under the act of May, 1837, the complainant is not bound to make such an offer in his bill, where, as in this case, he asks for no discovery of the usury, but merely seeks relief upon such testimony as he may himself produce to establish the alleged usury ; and that the word borrower, as used in the eighth section of the title of the revised statutes relative to the interest of money, (1 *R. S.* 773,) and in the fourth section of the act to prevent usury, (*Laws of* 1837, *p.* 487,) is not to be restricted to the individual to whom the original loan was made. To understand the sense in which the word borrower was used by the legislature, it may be necessary to refer to this eighth section of the revised statutes as it was originally reported by the revisers, in connection with other provisions reported by them. On referring to the original report of chapter four of the second part of the revised statutes, by the revisers, it will be seen that they proposed merely to avoid the bonds, notes, or other securities, given for the loan or forbearance of money, &c. except negotiable notes and bills in the hands of bona fide holders for value ; but to allow the lender of the money, or the assignee of a security given for the same, to recover back the money actually loaned, without any interest thereon. To carry out the principle of depriving the lender of any interest upon the amount loaned upon the usurious contract, but to give him back his money without interest, the revisers reported a section in these words : " Whenever the borrower of any money, goods, or things in action shall file a bill in chancery for a discovery of the money, goods, or things in action taken or received in violation of either of the foregoing provisions, it shall not be necessary for him to pay any *interest* whatever on the sum or thing loaned, but shall deposit with the register or clerk of such court only the *principal sum* admitted by him to have been loaned." But this new prin-

ciple of allowing the usurer or his assignee to recover back

the sum actually loaned, even without any interest, was not sanctioned by the legislature. The other sections reported by the revisers on that subject were therefore altered, so as to restore the old law of forfeiture of the whole amount loaned upon a usurious contract, except in the case of negotiable bills and notes which had gone into the hands of bona fide holders for value. And to make the enforcement of the forfeiture by the aid of this court, the more effectual, the legislature struck out of the section which they adopted as the eighth section of the title of the revised statutes relative to the interest of money, (1 *R. S.* 773,) the clause, which had been inserted therein by the revisers, requiring a deposit of the sum loaned, and inserted the last clause of that section, as it now stands, in these words : " Nor shall any court of equity require or compel the payment or deposit of the principal sum, or any part thereof, as a condition of granting relief to the borrower in any case of a usurious loan forbidden by this chapter." The effect of the first clause of this section, as passed by the legislature, was to compel the defendant to answer and make a discovery as to the alleged usury upon paying or offering to pay the sum loaned *without interest.* And this last clause, which was substituted by the legislature instead of that reported by the revisers, was evidently intended to alter the principle previously acted on by this court, not to give relief to the complainant, even where no discovery was necessary, except upon the condition of his paying the sum loaned with legal interest thereon. It is not improbable that the legislature intended to go as far as they afterwards did in the act of May, 1837, and that they overlooked the fact that the first clause in the section, which related to a discovery of the usury, only excused the complainant from paying or offering to pay *the interest* on the sum loaned. But as that clause of the section was in violation of a sound principle of the common law, that no man shall be called upon to answer upon oath to any matter which may criminate himself or subject him to a penalty or forfeiture, I considered myself bound, in the case of

*Livingston* v. *Harris*, (3 *Paige's Rep.* 528,) to give it a strict construction. And such construction was confirmed by the court for the correction of errors in that case upon appeal. (11 *Wend. Rep.* 329, *S. C.*) But as the last clause of the section merely relates to the forum in which relief might be sought to declare the forfeiture, which the law has created, there was no reason why the rules which regulate the construction of remedial statutes in general should not be applied in carrying out the principle which the legislature has so explicitly declared. That principle is, that in cases of usury where the borrower comes into this court merely for relief against the usurious contract, the court shall no longer refuse its aid, upon the ground that he does not offer in his bill to pay the amount actually loaned and remaining unpaid. For such an offer would be entirely useless, since the legislature has said the court shall not compel him to comply with that offer, as a condition of its granting relief against the usurious contract.

It is true, the word "borrower" alone is found in this section. And if the statute is to be construed literally, by restraining the term borrower to the particular individual to whom the loan is actually made, the remedy which the legislature intended to give to a complainant, who comes into this court for relief against a usurious security, will benefit neither the surety nor the grantee or heirs or devisees or personal representatives of the borrower. It is impossible to believe, however, that such could have been the intention of the legislature. And I have no doubt that this new principle, declared by the legislature in the last clause of this section, should be extended to a complainant claiming under and in privity with the original borrower, as well as to the borrower himself. A remedial act is to be construed liberally to carry into effect the intention of the legislature ; and it may be extended by construction to other cases within the same mischief though not within the words of the statute. Thus the statute of 9th Richard 2d, chapter 3, which gave a writ of error to the reversioner, upon a recovery against the tenant for life,

tenant in dower, tenant by the curtesy, or tenant in tail after possibility of issue extinct, was held to extend to a remainderman ; although the reversioner alone was mentioned in the statute. (*Winchester's case*, 3 *Coke's Rep.* 4.) And numerous cases are to be found in which remedial statutes have been held to extend to other persons, or other things, than those expressly mentioned in the statute ; where the principle of the statute, and the mischief intended to be remedied, was equally applicable to them. (*See Keilwey's Rep.* 96. 1 *Coke's Rep.* 256. 1 *Plow. Rep.* 36. 2 *Coke's Inst.* 43, 152, 382.)

The view I have taken of the provision of the revised statutes on this subject, renders it unnecessary for me to consider whether the act of May, 1837, to prevent usury, applies to the case. It will therefore be sufficient to say, in reference to that question, that the third section of that act appears to have been intended to reach cases arising under the original provisions of the revised statutes, as well as those which should thereafter arise under the substituted provisions contained in the statute of 1837. And the guaranty, which was given by the complainant in the fall of 1837, and which was itself void for usury, was clearly a case arising under that act. That guaranty, which contained a covenant to give a mortgage upon the premises, to secure the payment of the whole $2700, was a cloud upon the complainant's title, and impaired the value of his property. He therefore has a right, under the fifth section of the act of 1837, to have that guaranty delivered up and cancelled.

A party who purchases the mere equity of redemption in mortgaged premises, and who agrees to take the premises subject to the lien of the mortgage, cannot set up a defence against such mortgage, on the ground of usury, which his grantor never intended to insist upon. Nor can a mere stranger set up such a defence. But it is well settled, in this state at least, that the heir, or devisee of the mortgagor, or the grantee of premises which are subject to the apparent lien only of a usurious mortgage, being in privity with the mortgagor, may set up any defence which the mortgagor himself could have done. (*Jackson* v. *Domin-*

1844.

Cole
v.
Savage.

1844.

Fisk
v.
The Keeseville
Manuf. Co.

*ick,* 14 *John. Rep.* 435. *Lloyd* v. *Scott,* 4 *Peters' Rep.*
205. *Dix* v. *Van Wyck,* 2 *Hill's Rep.* 522. *Post* v. *Dart,*
8 *Paige's Rep.* 640.)    The complainant, therefore, by the
conveyance of the premises in question from the mortgagor,
with warranty, in the spring of 1837, became entitled to
all the rights which his grantor previously had in the
premises.    And among the rights thus acquired was the
right to file a bill in this court, to remove the cloud upon
the title created by this usurious and void mortgage.

The decision of the vice chancellor allowing the demur-
rer to the complainant's bill, was therefore erroneous, and
must be reversed, with costs to abide the event of this suit.
And the demurrer must be overruled with costs to be paid
by the defendants.    The defendants must pay such costs,
and put in their answer within forty days after service of
the decretal order to be entered upon this appeal ; or the
complainant's bill may be taken as confessed against them.(a)

---

(a) But see *Post* v. *The Bank of Utica,* decided by the court for the cor-
rection of errors, December, 1844.