1843.

Holmes
v.
Williams.

## HOLMES and others *vs.* WILLIAMS.

Where the holder and apparent owner of negotiable paper, sells it to a bona fide purchaser, at a discount, representing it to belong to himself and to be business paper, the transaction is not usurious as between the vendor and vendee of the paper, although the representation of the vendor was false, and it was in fact paper which had been made for the purpose of being sold at an usurious discount in the market.

August 15. THIS was an appeal from a decree of the vice chancellor of the fifth circuit dismissing the bill of the complainants with costs. The facts of the case are stated in the following opinion of the vice chancellor.

GRIDLEY, V. C. The two first named complainants constituted a mercantile firm in Utica, and were indebted to the defendant in a large sum of money. In the month of December last, S. Holmes, one of the said firm, had in his hands a draft for $2500 drawn upon the house of Morgan, Butler & Co. of New-York, by Ford & Smith, D. Vanderbilt & F. C. Chapman, and endorsed in blank by L. Harvey, which draft at the time had never been accepted or negotiated, but was accommodation paper, belonging to the drawers, made and endorsed to raise money on, for their benefit, and placed in the hands of Holmes for that purpose alone. This draft Holmes negotiated, sold and transferred by endorsement to the defendant, at a sum considerably below the amount due by its terms, and applying a portion of the consideration upon an existing demand of the defendant and receiving the remainder in cash—Holmes representing to Williams at the time that the draft was business paper and was the property of himself or himself and partners. In January following, the drawers applied to Holmes for the re-delivery of the draft ; whereupon he applied to the defendant to take up the draft, which was effected under the following agreement : That the two Holmes, with Kellogg as surety, should give the defendant their note, due on May 4th, 1839, for the amount due on the

draft, and that a suit should be commenced against the Holmes, upon which they should give a cognovit upon which judgment should be entered and execution issued and levied on the property of the two Holmes, returnable at the next term thereafter. The bill prays that the defendant may be perpetually enjoined from prosecuting the judgment execution, and that the same may be decreed to be satisfied of record, by the said defendant; and that he also may be decreed to deliver up the note to be cancelled.

The first question material to be decided is whether the purchase of the draft was usurious so that it was a void security in the defendant's hands. Were this a new question of construction to be settled under the statute, I confess I should think it was not. There is a good legal reason why a security, actually tainted with an original act of usury, should be held void in the hand of a bona fide and innocent holder. For the statute has declared it so in terms and in all such cases as of notes given in violation of the statute against gaming, horse racing, &c. Courts have uniformly held the securities void not merely against the payees and holders, with notice, but against holders receiving them for value and before maturity and without notice. But to hold a security purchased as this draft was, tainted with usury and void in the hands of the purchaser, the purchase must be decreed, *pro hac vice,* a loan—a mere contract of borrowing and lending. It is true that a contract of purchase in words is very properly held to be in construction of law a contract of loan—when such a device is resorted to to cover a transaction which is really a loan. But how is such a transaction to be regarded as a loan upon principle when the purchase is bona fide? Suppose the contract to be written out, describing A. the owner of a bond made by B. and setting out the sale of it for a sum less than the amount due on its face, and providing that a portion should be applied on a demand due from the seller to the purchaser and the residue paid in money—and suppose farther that on the part of the purchaser it is a bona fide purchase, and not intended by him as a cover for a loan,

there being nothing in the law making such a purchase (if real) unlawful : it would seem to be doing violence to the contract as it is set forth in words, and also as understood in the minds of the parties, especially of the purchaser to hold it a loan and not a purchase. Was there ever an agreement to loan money in the case supposed either in fact or intent? Did two minds ever meet and assent in fact or intent upon any such contract, and does not the law by its potent power of construction, when it declares such a purchase usurious, annihilate the actual agreement of the parties and substitute another in its stead totally different from it, thus changing an act in itself lawful into one which is declared to be a violation of a penal statute ? When one intentionally takes eight instead of seven per cent, though he may not intend to be guilty of usury, he is nevertheless guilty, for he intends to do what he does, but mistakes the law. Here, however, he buys a security which turns out to be accommodation paper, but he never agreed to buy any such paper ; he contracted to buy it as being business paper. He was mistaken in the fact, not in the law. Nevertheless, it is the settled doctrine of the courts that such a transaction is usurious. (*See* 2 *John. Cas.* 66, 206, 2*d ed.* ; 15 *John. Rep.* 44, 355 ; 7 *Wend.* 569.) The consequence of this doctrine as applied to this case is, that the draft was, in the hands of the defendant, so far as respects his right to maintain an action on it, tainted with usury and void.

The next question is whether the note made by the complainants to secure the amount due upon the draft when such draft was taken up, is also usurious and void. The complainant's counsel insists that it is a new security, substituted in the place of an usurious one, and therefore is itself tainted with usury. And such is undeniably the true doctrine as applied to ordinary cases of new securities substituted in the place of usurious ones, and is illustrated by the case of renewals of a usurious note ; and I apprehend that a change of a part, or even all of the names upon the paper, would not alter the legal rule. The defendant's counsel

admits the existence of this rule, but maintains that it is not applicable to a case where the holder of the tainted security is innocent of the usury in fact; and that the defendant in this case, though his purchase of the draft was technically usurious, is entitled under this rule to stand in the place of an innocent holder.

What then is the rule as to securities given in the place of usurious ones, to secure the amount to an innocent holder of the latter? In *Cuthbert et al.* v. *Halsy*, (8 *Durnford & East*, 390,) the plaintiff brought debt on a bond for $2680, conditioned to pay $1340 with interest, and the defendant pleaded that the bond was given for securing money lent by one Plank to the defendant upon a usurious contract between Plank and the defendant, &c. On the trial, it appeared that Plank discounted eighteen promissory notes of the defendants amounting to £1344. 2s. 3d., and took usurious interest on them. Plank afterwards carried them to the plaintiffs, his bankers, who gave him credit for them. When the notes fell due the plaintiffs applied for payment, and the defendant paid him £44. 2s. 3d. in money, and gave the bond in question for the residue. Lord Kenyon was of opinion that the plaintiff should recover, and so ruled, allowing a rule to show cause. On the argument of the cause at bar the defendant's counsel strenuously urged that the bond in question was but a substituted security, and cited various cases in which such securities had been held usurious. The judges, however, were unanimously of opinion that this rule, though they fully admitted its existence, and its application in ordinary cases, did not apply to a case where the substituted security was given to an innocent holder. So, too, in *Powell* v. *Waters*, (8 *Cowen*, 690, 691, 692,) Chancellor Jones, (after having said that Parish, who discounted the first note, knew it was not business paper, and that his knowledge affected his partners,) declares that the note then before the court was a substituted security for the first, and therefore void; and adds that such substituted security, given to an innocent holder, would be valid.

He says that a new security taken by such a meritorious holder of the usurious note, has a just claim to protection. The rule then is clearly established, that an innocent holder of paper substituted for usurious paper will be protected, and that the ordinary principle, which declares that a new security is infected with the same usury which tainted that for which it is substituted, is inapplicable to an innocent holder of usurious paper.

Is the defendant to be regarded as an innocent holder of the draft in question in this suit ? It is true, that by a series of decisions, which I have already cited, the act of purchasing the draft, (though he erroneously supposed it to be business paper, and therefore a lawful article of sale and purchase) was technically legally usurious ? But was he guilty in intent and in fact ? Could he have been punished upon an indictment under the act of 1837 ? On the contrary, was he not the innocent purchaser of this paper, and the victim of the civil disabilities incurred under the act by the most flagrant false pretences of one of the individuals who now asks a court of equity to visit upon him the consequences which flow from such fraudulent misrepresentations ? Though this draft be held void in the defendant's hands, yet, could he not sustain an action against S. Holmes for the loss he suffered by reason of his false affirmation that the draft in question was his own property, and therefore a lawful subject of purchase, when it was not ; by reason of which the very act of purchasing rendered the purchase void ? Could he not also recover in an action for money had and received, the money he advanced upon this purchase ; which was valueless, solely by reason of the fraudulent concealment and misrepresentation of a fact in relation to the draft ? Can a man by the grossest fraud, amounting, as I think, to the offence of obtaining money by false pretences, get another's money (without any intentional fault on the part of that other,) and not be responsible for it at law ? I think not. I think S. Holmes was liable to the defendant for the money he obtained from him by the fraudulent transfer of paper

which he falsely declared to be his own, and which, if it had been so, would have been a valid and available security in the defendant's hands. If then this money was really due and recoverable from Holmes, would not a note given by S. Holmes alone, to secure it, be good and available against him ? Suppose that the defendant had, while he held the draft, learned that it was not the property of Holmes, and that by Holmes's false representation he had parted with his money under circumstances which rendered the draft void in his hands, and had called on Holmes and charged him with the fraud, and Holmes had then taken up the draft and given his own note instead of it ; could Holmes defend himself against a suit on such note on the ground of usury ? Would it not be allowing him to succeed in a defence founded on his own fraud instead of the fraud of his antagonist ? Suppose he had transferred a forged note, or a note infected with existing usury, or void for any other cause, affirming it to be good and denying the facts which rendered it void, would he not be liable ? And if he had got back the void paper and given his own note in its stead, could he defend himself in a suit upon such note ? I think the merits of his defence would be the same in all the cases I have supposed. If the new security then would have been free from objection for usury, if executed by S. Holmes alone, it must be so notwithstanding others signed the note as sureties. In *Cram* v. *Hendricks*, (7 *Wend.* 584,) the chancellor, in commenting on the case of *Muir* v. *O'Ruggles*, (15 *John. Rep.* 57,) says in express terms, that the broker who sold the bill to the purchaser was liable to him for the money advanced, though the note might be void in the hands of such purchaser, he, like the defendant in this case, supposing that the agent owned the bill. This opinion of the chancellor, though not necessary to the decision of that case, is entitled to great weight as the opinion of a learned jurist ; and the weight of that authority I think is somewhat strengthened by the fact, that the chancellor was for holding the doctrine impeaching securities for usury with greater strictness and rigor than a majority of the court in the case then before

them. I am not prepared to say that Holmes would have been responsible for more than the money he advanced, especially in an action for money had and received or money paid ; though he probably might be for the full amount of the draft in an action on the case. But however that may be, I do not think that embracing in the new note the whole amount of the draft would render that note usurious, provided it would not otherwise be so. If the false affirmation had been true, the draft would have been available to the defendant for the whole amount of it, and if Mr. Holmes had chosen to indemnify him by giving him a note for that amount, I do not see that it would be usurious ; or even that he could in a suit upon this note have set up a defence as to the excess. To sustain this bill, however, the note must be adjudged void for usury, which, for the reasons before stated, I am of opinion cannot be maintained. To sustain it would be to make the court the organ of great injustice ; I do not mean merely by enforcing the statute against usury even in its utmost rigor, severe as that statute is—for he who will knowingly violate the statute must not complain if he is compelled to suffer the extreme penalties of the act—but it would present Mr. Holmes in the attitude of fraudulently obtaining the defendant's money for worthless paper, and after receiving back the paper and giving his own note as an equivalent, then asking the court of chancery to make his fraud successful, and to protect him in the possession of its fruits, by declaring the note thus given void for usury. I cannot but think that to carry the principle to such an extent would be, in the language of Lord Kenyon in the case before cited from Durnford & East, extending it further than policy or the words of the act require. I have already remarked, that in my judgment the securities must stand or fall with this principle, that if this note would be good if made by Sylvanus Holmes alone, it must be adjudged good though others unite with him in securing a demand due from and legally collectable of him.

The conclusion to which this view of the subject brings me, without examining the other questions raised and dis-

cussed by the counsel, is that the bill should be dismissed with costs.

*S. Stevens,* for the appellant.

*S. Beardsley,* for the respondent.

The CHANCELLOR said that he concurred in the opinion of the vice chancellor, that where the holder and apparent owner of negotiable securities sells them at a discount, to a bona fide purchaser who has no knowledge of the purpose for which such securities were made, the holder representing such securities to belong to himself and to be business paper, the transaction was not usurious as between the vendor and the vendee ; although the representation of the vendor was false, and the securities were in fact made for the sole purpose of being sold at an usurious discount in the market.

Decree affirmed with costs.