Green *v.* Morse.

————◆————

SAME TERM. *Before the same Justices.*

GREEN, executrix, &c. *vs.* MORSE and others.

The assignees of a debtor, who have accepted the trust created by an assignment for the benefit of creditors, have no right to refuse the payment of a debt specifically directed to be paid, in the assignment, on the ground of its being usurious; in the absence of any request or authority to them from the assignor, or from any creditor provided for in the assignment, to refuse such payment; and where the assignees are not themselves creditors of the assignor.

In such a case the assignees are mere naked trustees, bound to execute the trust according to its prescribed conditions, with no power to substitute their own discretion in the place of the will of the assignor.

*It seems* that even where the assignees are creditors, and interested under the assignment, as such, if they have accepted the assignment, and acted under it, and are seeking to affirm it—claiming under its provisions—they cannot refuse to execute the assignment in favor of a creditor whose debt is usurious, and enforce it in favor of themselves and others.

A mere stranger cannot set up the defence of usury. That defence can only be set up by a party to the usurious contract, or one who represents him, as a privy in blood or in estate.

A court of equity, in directing trustees under an assignment made by a debtor for

the benefit of creditors, to pay the amount of a usurious note specifically directed, by the assignor, to be paid, will direct the usurious premium to be first deducted.

In Equity. This was an appeal, by the defendants, from a decree of the late vice chancellor of the fifth circuit. The bill was filed by the complainant as surviving executrix of Eben Blakeman, deceased, against the defendants as assignees of Sylvester Thayer, to compel the payment, by them, of the amount of a promissory note given to the testator for $450, dated May 10th, 1836, and payable July 10th, 1837, executed by Thayer as principal and Elijah Morse as surety. The bill stated that on the 9th of October, 1837, Thayer, together with his wife, executed to the defendants an assignment of his real and personal estate, in trust to pay the debts or demands which he owed, to all the persons named in the assignment, which debts amounted to $12,278,07. That among the creditors named in the assignment was Blakeman, the testator, and the above mentioned note, then owned by him, was specified among the debts to be paid by the assignees. That the assignees were directed to dispose of the property, and pay the said debts without preference; but in case of a deficiency, the assignees were to pay *pro rata.* In case of an overplus, they were to pay the laborers on the farm, and then distribute among the creditors generally, without preference. That the defendants took upon themselves the trust, and sold and disposed of the assigned property; and that more than $10,000 had come to their hands, but that they had refused to pay any thing upon this note, or to make any dividend or distribution in favor of it; and that they had either misapplied the funds or diverted the same to their own use. The bill charged that the defendants were liable for interest upon the funds which they had received, from the end of one year after the date of the assignment; and that if any of the assigned property remained unsold, or debts uncollected, the defendants were bound to proceed at once to close up the business, and pay over the balance in their hands; and that they were liable to account as trustees. That Thayer, the assignor, was discharged as a bankrupt, in 1842.

The bill prayed for an answer without oath; that the defendants might render a full account of the assigned property, and the avails thereof, and pay over a just proportion to the complainant, on the note in question, with costs of suit, and for general relief. The answer of the defendants admitted most of the material facts alleged in the bill, but denied that the avails of the trust property had been $10,000. The defendants admitted, however, that they had realized a considerable sum, over and above incumbrances, but alleged that after taking out a small compensation, and their disbursements, they had devoted all the avails of the fund to the payment of the debts preferred in the assignment, so far as they were not usurious and illegal. That they had not paid any thing on the note of the complainant, because it was void for usury; that they had been advised by counsel that they ought to pay legal debts only, and that they had acted under this advice, and had paid over, on honest debts, all the funds received; .that there were prior liens on the real and personal estate, which they had paid off, and that there remained other legal debts yet unpaid, to the amount of several thousand dollars. By a stipulation in the cause it was admitted that the note given to Blakeman was included in the list of preferred debts, in the assignment executed by Thayer; and that there were funds enough in the defendants' hands to authorize a decree for an account, unless the alleged usury constituted a valid defence to the bill. It was also stipulated that in case it should be held that the complainant was entitled to a decree, the question of the amount of the assigned property and the avails thereof, and such other matters as might be material, should be referred to a master to take proof and report thereon. The cause was heard before the vice chancellor upon pleadings and proofs; who made a decree directing the defendants to render an account of the assigned property, with interest; and to pay over to the complainant such amount of the promissory note given to the testator, by the assignor, and the interest thereon, as should be fixed on, upon reference to a master, with costs to be taxed. And a reference was directed, to a master, to compute the

amount due on the note, and the amount of the preferred debts mentioned in the same class with the note ; to take and state an account of the assigned property, and of the avails thereof, and of the time when the same came into the defendants' hands, to compute interest upon such avails, and to apportion the gross amount of such avails and interest pursuant to the assignment, specifying particularly the amount applicable upon the note, and interest. Also to take and state an account of the assigned property remaining unsold, if any, &c.

The following opinion was delivered by the vice chancellor :

GRIDLEY, V. C.   The principal question in this case, has been substantially decided by me in the case of *Stevens* v. *Frost ;* and for the reasons expressed in the opinion delivered in that case, I regard the defendants as standing in a position which forbids their setting up the usurious character of the complainant's demand, against the execution of their duties enjoined in the assignment.   To this assignment they are not only parties, but they have accepted it, and acted under it for six or eight years by receiving, appropriating, and partially distributing the funds which the instrument conveyed to them.   The defendants' counsel, in the ingenious argument submitted by him, insisted that the complainant's note was void for usury, and that the court had no power to give it legal validity ; that the assignment itself as a further security for this note is equally void ; and that in no instance can the holder of a usurious security succeed in a direct attempt to enforce it, at law or equity. These, as general propositions, are undeniably true ; but it cannot be admitted that they are *universally so,* under *all circumstances, and between all parties.*   It has long been settled that this defence can only be taken by the *party* to the usurious agreement, or persons representing him as privies in blood or estate.   A *stranger* cannot set up this defence.   The maker of a usurious note, bond or mortgage, may pay it ; and when it is paid, he cannot recover back the money.   So he may agree with another, for a valid consideration, to pay it, and that other cannot *resist* the payment on the ground of usury.   He may also

Green v. Morse.

set apart and dedicate a certain fund, or certain specified prop-
erty, to the payment of it; and his agents who have received
the funds with which to pay it cannot withhold it on the ground
of usury. It is in all these cases the party who owes the debt,
and who devotes his property to pay it, that can alone set up this
defence. But he may not wish to set up a defence of this descrip-
tion: his desire to avoid litigation, his pride of character, or his
conscientious sense of justice, may induce him to waive his legal
rights and to satisfy a demand, although it may be void for
usury. When, therefore, he waives his legal rights and makes
provision for the payment of such a demand, no stranger,
though he be an agent or a trustee, who by express or implied
agreement has assumed the agency of making this payment
on the behalf of the debtor who furnishes the funds for that
purpose, can put the funds in his pocket and set the creditors
at defiance. Such is the principle to be extracted from the
cases on this subject; among which are the following: 5 *Conn.
Rep.* 154; 2 *Id.* 132; 13 *Mass. Rep.* 515; 15 *Id.* 103;
9 *Paige* 145; 7 *Id.* 615, 641, 642, 643.

I will illustrate my views on this subject, by supposing that
A. executes an usurious mortgage on a certain farm for $5000,
the farm being worth $6000. A. conveys it to B. at the price of
$6000, $1000 of which is paid down, and the remaining $5000
by assuming the incumbrance and taking the conveyance sub-
ject to the payment of the mortgage. Now it is settled that in
such a case the mortgagee may maintain a suit for a foreclosure
of the mortgage and a collection of the moneys secured by it;
and that too, *directly upon the usurious security*, and that B.
cannot set up usury as a defence. And the reason is, that he
has only bought and received the equity of redemption in the
premises, that is, the interest in the premises subject to an
agreement to pay the amount of the lien on the premises, or in
default thereof, to have that sum carved out of them to satisfy
the mortgage. In such a case it is in fact the original debtor
and mortgagor who pays the mortgage debt; and B. is only
the conduit through which, and the instrument by which, the
money is paid. And the court will not allow him, by an act

of treachery to the original debtor, to put the funds into his own pocket, and thus defeat the creditor. The purchaser B., though he has bought and owns the fee simple of the premises bound by the mortgage, yet in equity he does not own that portion of them thus devoted to the payment of the mortgage, except as *trustee* for the mortgagor, sacredly bound to perform the trust. It is on this principle that the defendants are prohibited from setting up usury in this case. They have received certain property from the assignor, specially destined by the assignment to pay the complainant's demand. The debtor himself waived the usury, and made the defendants his agents and attorneys to appropriate the funds in question to the payment of this demand. They, for a valid consideration, agreed to *perform this trust,* and receive the whole fund thus devoted to this specific object. *They* therefore have no right to refuse to perform the trust. It is not for *them*—the mere agents of the assignor, to discharge his debt to the complainant—to set up the usurious nature of the security given, against the express direction of the assignor and in violation of their engagement to him. The defendants have no interest in that portion of the funds which the assignment devotes to the payment of the note in question, in such a sense as to authorize them to set up this defence. They are mere messengers employed by the debtor to carry the money to the creditor, and cannot withhold it for their own benefit. Suppose a banker in Utica consigns a box of specie to the care of a merchant in New-York, to pay to the holder of an usurious note; could the merchant convert the money to his own use and then meet the demand of the creditor by saying, " Sir, I have indeed received the money destined to the payment of your debt; but, I can prove the note you hold to be tainted with usury, and I shall therefore keep the fund and set you at defiance?" I think it quite clear that the law would not countenance such a defence ; and in principle I regard this case as standing on the same ground. In my judgment the chancellor has substantially decided this question in the case of *Pratt* v. *Adams,* (7 *Paige,* 615.) The assignees in that case filed their bill for the purpose of ascertaining their

Green v. Morse.

duty in distributing among the several claimants the funds assigned, some of which were devoted by the assignor to pay usurious paper. The chancellor held, on exceptions to the master's report, that all such paper was to be paid ; and that the *creditors* who claimed *under the assignment* could not object to the payment of other creditors under the assignment, although the demands of the latter were usurious. Now if the creditors could not set up this defence, *a fortiori* these assignees cannot do it on the ground that they represent such creditors, and withhold the fund on their behalf. They manifestly cannot do it on behalf of the assignor ; for he has devoted the fund to the specific *purpose* of paying this debt and has never revoked his authority, nor absolved them from their obligation to perform the trust. They cannot do it on *their own* account as *adversary creditors* seeking to defeat and set aside the assignment; for they have accepted the assignment, and are estopped from setting up such a ground of defence.

These are briefly my views of the rights of the parties to this suit, and my conclusion is that the complainant is entitled to a decree, with a reference and costs.

*Geo. F. Comstock*, for the appellants. I. The note on account of which the bill is filed is proved to have been infected with usury, as charged in the answer. Being, therefore, originally void for usury, it was not purified, nor did it become valid by the execution of the deed of assignment in trust to pay it. That the taint of usury is not removed by the assignment is very clear. The note is in that respect as usurious as it always was. The usurious contract was not ratified by the deed of trust. Such a contract is incapable of being ratified. There are cases where usury has been held no ground of action or defence. A usurious debt may be *paid*, and the payment is good except as to the excess ; and this may be so whether the payment is money, or property conveyed in satisfaction. So also, a stranger cannot rely upon usury. This, on examination, will be found to be the length and breadth of all the cases where the objection of usury has been disregarded. But these

cases do not rest upon the idea of ratification.    While the con-
tract remains executory, it is always void.    (*Bly. on Usury,*
89, *and the cases there cited.    2 Hill,* 522.    1 *Story's Eq. pp.*
303, 4, § 307, 1*st. ed.    Id. p.* 338, § 345 *and note.*)  II. The
deed of trust, so far from purifying or ratifying the note, is itself
contaminated with the usury contained in the note, and is
therefore void, either wholly or so far as it provides for the pay-
ment of the usurious debt.    It was executed for the purpose of
securing and providing for the payment of usury.    It therefore
comes within the language, and clearly within the intent, of
the statute.    (1 *R. S.* 760, § 4, 2*d ed.*)   It is not a conveyance
of property in satisfaction of a debt.    The debt remains, and
the trust to pay it is merely a further and collateral security for
the payment of it.    The assignment is a derivative obligation,
of the same character and of no greater force, than a new
promise to pay.  (7 *Paige,* 615, 639, 641, 2.    3 *Edw. Ch. Rep.*
195.    3 *Wend.* 584.    *Bly. on Usury,* 291, *citing Dunbar* v.
*Long,* 2 *Hen. & Munf.* 212.    *Id.* 292, *citing Martin* v. *Lind-*
*sey,* 1 *Leigh,* 499.    *Id.* 286, *citing Marks* v. *Morris,* 2 *Munf.*
407.    20 *Wend.* 234.)   III. If the assignment is void as to the
usurious trust merely, the objection to the bill, on that account,
is unanswerable.    If it is wholly void, then we say the objec-
tion is not answered or obviated by the fact that the defendants
have executed *some of the trusts* contained in the instrument.
So far as they have executed the trusts in favor of just and in-
nocent creditors it is well.    But this does not give the assign-
ment any greater validity, or compel them to execute the trusts
in favor of the usurious creditor.    (3 *Edwards' Ch. Rep.* 195.
3 *Wend.* 584.)   IV. The objection that the bill is filed to en-
force a contract made in violation of the laws and policy of this
state is also fatal to it.    *Ex turpi causa, &c.*  (*Nellis* v. *Clark,*
20 *Wend.* 24, 32.)   V. The note of Thayer was given for
$450.    The sum loaned was only $385.    The decree is erro-
neous in allowing the plaintiffs to recover the *usury,* as well as
the principal and interest.    VI. The defendants, being trustees,
should not be personally charged with costs.

*T. Jenkins*, for the respondent. I. Thayer, having assigned his property to the defendants for the payment of certain specific creditors and certain specific demands therein mentioned, of which the note in question was one, the defendants are not at liberty to set up the defence of usury to the note, but must account for the funds in their hands. (5 *Conn. Rep.* 154. 2 *Id.* 132. 13 *Mass.* 515. 15 *Id.* 103. 9 *Paige*, 145. *Cole* v. *Savage*, 10 *Id.* 583.) II. The defendants, being the assignees of Thayer, have no right to claim any diminution from the plaintiff's share on account of the alleged usurious premium. They must perform their duty according to the terms of the assignment; and pay the note, whether it be usurious, or not. They have no discretion, on the subject; and the assignment does not give them the power to discriminate between the debts owing by the assignor.

*By the Court*, GRIDLEY, J. Further reflection has confirmed me in the views expressed in the opinion delivered by me when this cause was before me as vice chancellor of the fifth circuit. In addition to what was said in that opinion, I will only add a few brief remarks.

It should be borne in mind that the ground upon which the defendants refuse to appropriate any portion of the assigned funds to the payment of the complainant's demand, in defiance of a special direction in the assignment, is not that they have been requested or authorized to do so by the assignor, nor by any creditor under the assignment, nor on their own behalf as creditors of the assignor; but solely because they have been advised that the demand is usurious; and that it is their duty to apply the funds to the payment of the other demands mentioned in the assignment, which are unaffected by usury.

Upon this state of facts, the question is whether the defendants stand in a situation to raise the defence of usury against a demand which they have been directed to pay, by the positive provision of the deed of trust which they have accepted, and agreed to execute. They are mere naked trustees, bound to execute the trust according to its prescribed conditions, with no

power to substitute their own discretion in the place of the will of the assignor. No principle is better settled than that a mere stranger cannot set up this defence. No person can do this but a party to the usurious contract, or one who represents him, as a privy in blood or estate. It is quite obvious, therefore, that the defendants cannot raise this question unless they can do it as representatives, either of the assignor, or of the other creditors under the assignment who themselves stand in a situation to question the validity of the complainant's claim.

I. The assignor, who owes the debt in question, does not set up this defence, and no one has a right to do it for him, without authority. This may be tested by supposing the case of an assignment for the payment of a single creditor only; and that the assignee had accepted the trust and converted the funds assigned, into money. No one will be hardy enough to contend that the assignee in such a case could be allowed to pocket the funds, and meet the creditor, whom, by the acceptance of the trust, he had undertaken to pay, with the defence of usury. For the plain reason, that *he* is a mere stranger to the usurious contract, and therefore cannot raise the question on his own account. Much less can he do it on account of the assignor; because that, in attempting to do so, he not only acts *without authority*, but in *defiance of the assignor's* positive direction, and in violation of the trust under which he received the funds. It would indeed be a new exercise of the jurisdiction of this court, to uphold the defence of a party against the execution of a trust he had assumed, which defence was based upon an act of the foulest treachery against the debtor *by* whom, and the creditor *for* whom, the assignment was made.

II. I think it equally clear that the defendants cannot successfully urge this defence as the representatives of the other creditors for whom the assignment provides. (1.) They have received no authority from such creditors to take this course; and none is to be found in the deed of trust. The extent of their authority to act for such creditors is, to faithfully execute the plain conditions of the assignment, and to pay over to them, upon their debts, precisely what the assignor directed in the

deed of trust, which confers upon them the only powers they possess. (2.) In acting for the creditors, in setting up the defence of usury in their behalf, the defendants are not only acting *without authority* from the creditors, but in plain violation of the mandate of the assignor, and of their duty to perform the conditions of the trust. They have acted under the deed of trust ; and have received the assignor's property *upon the condition* of appropriating it in such manner as he directed. And in refusing to pay a demand which, in the assignment, he directed them to pay, they are guilty of infidelity and treachery towards him. Having received the property of the assignor, under the assignment, and upon the faith that they would faithfully perform the trusts contained in it, it would be a gross breach of trust, by setting up a defence of this character, to effect a disposition of the property assigned, entirely different from that contemplated by the assignor, and expressed in the instrument. They are the mere servants of the assignor, to obey his instructions, and are estopped from making a defence which would substantially defeat the assignment, and create a new one, of which the assignor was not the author. A wide difference exists, between a case where the assignor, as here, directs a *specific debt to be paid*, and where he assigns generally for the benefit of creditors. In the latter case, the assignees are not bound to pay usurious debts, while in the former they *are*. See *Pratt* v. *Adams*, (7 *Paige*, 642,) which case is entirely consistent with the doctrine contained in 3 *Edw. Ch. Rep.* 195, so strenuously urged by the counsel. (3.) Suppose, however, the difficulty of regarding the defendants as the lawful representatives of the other creditors under the assignment, is surmounted ; it is still impossible for them to set up this defence, consistently with well established principles. The defendants are acting under the assignment, and as agents and trustees for those creditors, are seeking the shares provided for them, by it. In other words, they have elected to *enforce it ;* instead of *assailing it* by a hostile proceeding. And are therefore *estopped* from questioning its provisions in favor of others while they are claiming the benefit of them for themselves.

This is so declared in *Pratt* v. *Adams*, (7 *Paige*, 639, 641.) The case *might* have been different if a creditor had proceeded to judgment and execution against the assignor, and thus seized the assigned property, or filed a creditor's bill against the assignor and assignees, to set aside the assignment as fraudulent against bona fide creditors, for the reason that it provided for the payment of usurious and void debts. A creditor, standing in such an attitude, would not be *estopped* from assailing the provisions of the assignment made in favor of debts affected with usury, as a creditor coming in *under the assignment*, clearly is. (*See* 7 *Paige*, 641, 642, 644.) It needs no argument to prove that the creditors themselves are estopped. So are the defendants who claim to represent them. (4.) But the creditors are in no *condition* to raise the question of usury. They are mere open creditors at large, who have acquired no lien on the property by judgment and execution ; nor upon the choses in action, by a creditor's bill. They, therefore, are not privies, in any sense which will entitle them to question any disposition the assignor may choose to make of his property in the payment of a usurious debt. Suppose a debtor chooses to deliver over either money or property to pay an usurious debt ; can other creditors at large prevent it ? Can they seize the property *in transitu*, or stay the threatened payment by injunction ? Clearly not. A creditor who has no lien derived under an execution, or a creditor's bill, has no means of interfering to prevent the consummation of such assignment, even if it should exhaust every dollar of the debtor's property. In the case we are considering, the debtor has chosen to pay a usurious debt to the complainant, and the funds devoted to this object are in the hands of the defendants, (as agents of the debtor,) to deliver over to the complainant. It is very clear, therefore, that the creditors without judgment, execution, or creditor's bill, have no power to arrest the funds on their way to the favored creditor. And if we were to suppose the defendants at liberty to drop for the moment their characters of agents of the assignor, and to assume that of representatives of the creditors, still they

would have no greater power to divert the funds from their destination than their principals, the creditors themselves.

(5.) The creditors under the assignment have no right to set up the defence of usury, and thus divert the funds appropriated to the payment of the complainant's debt, on the ground that they are in equity the assignees of those funds for their own benefit. The defendants are, indeed, the assignees of the *entire fund*. But in equity they are assignees for their own benefit, of just so much as the assignor transferred for their benefit, and no more. When real estate is conveyed *subject to the payment* of an usurious mortgage, the grantee gets only the residue of the interest in the premises after the mortgage has been satisfied out of it. And he is bound to pay the mortgage, and is not allowed to set up usury to defeat the foreclosure and sale In *Shufelt v. Shufelt*, (9 *Paige* 140,) the chancellor, after declaring that the owner of land who should convey it to a purchaser, would convey to his grantee the same right to question a usurious lien upon the premises which he himself possessed before the conveyance, proceeds as follows: "He *may* however, if he thinks proper to do so, elect to *affirm* the usurious mortgage by selling his property subject to the payment or the liens of such mortgage. And the purchaser, in that case, takes only the equity of redemption, and cannot question the validity of the previous mortgage on the ground of usury. (13 *Mass. Rep.* 515, 15 *id.* 103.") (*See also* 10 *Paige* 591; 11 *Id.* 635, *and* 1 *Barbour's Sup. Court Rep.* 272.) This doctrine is decisive of the question we are now discussing. The two cases are precisely similar in principle. The assignor conveyed, by the assignment to the defendants as trustees for the complainant, *so much* of the assigned fund, as was necessary to pay the debt which she represents, or to pay a pro rata proportion of that debt, with the other claims in the same class of preferred demands. And all that was assigned to the other creditors, was *merely the overplus, or residue* of the assigned fund, after applying the prescribed amount to the payment of the complainant's debt. Or, in other words, the whole fund was assigned to the defendants, to

Green *v.* Morse.

pay over to the other creditors, *subject to a deduction of so* much as would be necessary to pay first what had been directed to be paid towards the satisfaction of the debt in question. Of course the other creditors can claim no part of the fund appropriated to pay the debt subject to the payment of which the assignment under which they claim was made. This, however, is a more favorable view for the creditors than the facts in the case will warrant. In truth, the funds appropriated to pay the complainant's debt, *were in equity conveyed to the father of the complainant, the original payee of the note.* And the other creditors never had the semblance of a claim to, or lien upon them. They in equity belong to the complainant. They were *conveyed* to the defendants *for* the complainant, and they, by accepting the trust, agreed to execute it and pay over the fund in pursuance of it. And it is a maxim in equity that what has been agreed to be done shall be regarded in equity as done. (1 *Story, Eq. Jur.* § 64.)

On the former argument no question was made concerning the *usurious excess*; and nothing was said of it in the opinion. I perceive, however, that the decree is drawn so as to embrace this excess as well as the amount actually loaned, with the lawful interest. And I confess that I do not see why that is not right, upon the principle that the defendants are *estopped from setting up the defence of usury*, they not standing in a situation to raise that question. But in the case of *Pratt* v. *Adams*, the chancellor held that the court of chancery would not order the assignees to pay such excess. And perhaps this distinction may be supported on the ground that the bill is quasi a bill for a specific performance, and that the court will not, in its discretion, direct an unconscionable agreement or trust to be executed. In this case, notwithstanding our doubts, we will follow the decision of the chancellor. The decree will therefore be modified, by striking out the usurious excess; but in all other parts it must be affirmed.