NEW YORK PRACTICE REPORTS. 39

Hungerford's Bank agt. The Potsdam and Watertown R. R. Co.

## SUPREME COURT.

HUNGERFORD's BANK agt. THE POTSDAM AND WATERTOWN
RAILROAD COMPANY, EDWIN DODGE, WILLIS PHELPS,
H. HOLCOMB and others.

The "act to prohibit corporations from interposing the defence of usury in any action," passed April 6, 1850, is as to the contract of the corporation, that the statute of usury is *quasi* repealed; but not as to the contract of individual *indorsers* or *sureties* for such corporation. They are not necessarily restricted by their relation to the principal, to the defences which may be made available to the maker of a note.

Therefore, where the contract or promise of the corporation to pay, is clearly usurious in itself, and the corporation is, by this act, prohibited from interposing the defence of usury to an action thereon, the indorsers or sureties of the corporation, who are liable under a different contract from the principal, may interpose such defence.

*Fifth District General Term, October,* 1859.

*Present,* W. F. ALLEN, PRATT, BACON *and* MULLIN, *Justices.*

THIS action was brought on a promissory note made by the Potsdam and Watertown Railroad Company, indorsed by the other defendants, for $5,000, payable in the city of New York. It was given to take up another note of the same amount, made and indorsed by the same parties, payable also in the city of New York, which had been protested, and which the plaintiff had been obliged to take up with New York funds. Plaintiff is located at Adams, Jefferson county, N. Y. When the note in suit was given, the defendant, the Potsdam and Watertown Railroad Company, paid to plaintiff the discount on it, and the exchange on the old note, being half of one per cent, that being the current rate of exchange between Adams and New York. The defence of usury was set up by the indorsers, and the case was tried at the Jefferson circuit, in December, 1858, before Hon. CHARLES MASON, when judgment was rendered for the plaintiff, for the full amount claimed against all the defendants.

Mr. Justice MASON gave the following reasons for his judgment : This loan was made by the plaintiff to the defendant, the Potsdam and Watertown Railroad Company, and the other defendants were accommodation indorsers of the note.   This note in suit was given upon an agreement made between the plaintiff and the railroad company, by which the plaintiff intended to get, and did get, more than seven per cent for the loan or forbearance of money. (*The Seneca County Bank* agt. *Schermerhorn,* 1 *Denio,* 133 ; *Bank of the United States* agt. *Davis,* 2 *Hill,* 457 ; 7 *Paige,* 559 ; 17 *Ves.,* 444 ; *Carr. & P.,* 101 ; 3 *Barn. & Cres.,* 276 ; 2 *Parsons on Contracts,* 384, 385, 390 ; 19 *John.,* 294.)

The contract, however, was a valid one, as between the plaintiff and the principal debtor, the Potsdam and Watertown Railroad Company ; for the act of April 6, 1850 (*Session Laws, p.* 344), must be construed as a virtual repeal of the statutes of usury, as to all contracts made by such associations, stipulating to pay more than seven per cent interest.  (*Curtis* agt. *Leavitt,* 15 *N. Y. R.,* 9 ; *Butterworth* agt. *O'Brien,* 16 *How. Pr. R.,* 503.)   There would be no doubt that the defence of usury is made out in this case, were it not that this contract of loan was made to the defendant, the Potsdam and Watertown Railroad Company ; as between that corporation and the plaintiff, the contract is valid, although there was an agreement to pay more than seven per cent for the loan or forbearance of money.   The only remaining question is, whether these defendants, who are mere accommodation indorsers for this corporation, can set up this defence of usury.

The rule is a familiar one, that a contract can only be avoided for usury by the party who made it, or by some one standing in legal privity with him, and not by a stranger to the transaction. (*Dix* agt. *Van Wyck,* 2 *Hill,* 524; *Green* agt. *Morse,* 4 *Barb.,* 341.)  These indorsers, although not actual recipients of the money loaned, or in the strictest sense, a party to the contract of loan, yet they are, as

indorsers of this note, privies to the original contract, and liable upon it, equally with the principal who borrowed the money; and, as privies, they have a right to set up any defence which the principal could. But when the contract is valid between the principal debtor and lender, I do not think the accommodation indorsers can say the contract is illegal as to them.

These indorsers have made no contract of loan with the plaintiff; as indorsers, they are privies to the original contract of loan made by the defendant, the principal debtor. If I am right in this, then these indorsers are but nothing more than privies to a valid contract made by their principal, and of course cannot set up the defence of usury when their principal debtor could not. This result is inevitable, unless we hold that these accommodation indorsers are to be deemed borrowers from the plaintiff, and each to have an independent contract with the plaintiff, or unless we hold them actual parties to a contract of loan, neither of which can they strictly be regarded. In one sense they are parties to the original contract; that is, they are equally liable upon the note with the maker, and are parties to the note, but they have no defence which the maker has not. The plaintiff is entitled to recover against these indorsers, the amount of this note, which amounts, principal and interest, to the sum of five thousand four hundred and sixty-six dollars and sixty-six cents, and for which sum I order judgment for the plaintiff, with costs to be taxed. From this judgment an appeal was taken by the defendants to the general term.

H. L. KNOWLES, *for appellants.*
MERWIN & SPRATT, *for respondent.*

By the Court, W. F. ALLEN, Justice. The plaintiff loaned to the Potsdam and Watertown Railroad Company money at a greater rate of interest than that allowed by

law, and to secure the repayment of the money so loaned, with the legal interest, the note in suit was given, the individual defendants indorsing as the sureties, and for the accommodation of the railroad company, the maker of the note. Judgment at the circuit was given against the indorsers, upon the ground that they were estopped by the "Act to prohibit corporations from interposing the defence of usury in any action," passed April 6, 1850, from alleging usury as a defence to this action.

The defendants are in no sense strangers to the contract of loan, so as to preclude them from setting up the defence of usury when sued upon their indorsement, or from seeking affirmative relief, by action, on the ground of usury. They are sureties of the borrower, and as such are embraced in the term "borrower," as used in the eighth section of the Revised Statutes, relating to usury, and in the fourth section of the usury law of 1837. (3 R. S., 5th ed., 73, §§ 8, 13, 74; Post agt. Bank of Utica, 7 Hill, 391; Cole agt. Sanger, 10 Paige, 583; Morse agt. Hovey, 9 Paige, 197.) A mere stranger to the transaction cannot ordinarily allege usury in respect to it; but a party to deed or contract, as well as those standing in legal privity with him, can, unless estopped or under disability of some kind, always show it to be void when it is sought to be enforced against him. The defendants are not certainly strangers to their own contract of indorsement. They, and they only, can allege the invalidity of their contract. (Dix agt. Van Wyck, 2 Hill, 522; Green agt. Moore, 4 Barb., 332.) They are not necessarily restricted by their relation to the principal, to the defences which may be made available to the maker of the note.

They are not joint contractors with the maker, and the contracts of the maker and indorsers are entirely distinct, and governed by different rules. The contract of the one is conditional, while that of the other is absolute. An action against an indorser may be defeated by want of

demand and notice, by dealing with the principal debtor to his prejudice, when he occupies the position of a surety; and an indorsement may be void, as obtained by fraud, or for some other reason, while the contract of the maker is valid. So, too, one party to a note (maker or indorser) may be estopped by his own acts from setting up a defence, true in fact and common to both, and which would be fatal, while the other parties may avail themselves of it. (*McKnight* agt. *Wheeler*, 6 *Hill*, 492; *Holmes* agt. *Williams*, 10 *Paige*, 326; 3 *Kern.*, 316; *per* DENIO, J.; *Chamberlain* agt. *Townsend*, 26 *Barb.*, 611; *Dane* agt. *Schutt*, 2 *Duer* 621; *Clark* agt. *Sessions*, 4 *id.*, 408; *Prescott* agt. *Davis*, 4 *Barb.*, 495.)

As one party may be estopped by his own acts from setting up a defence, so he may be estopped by act and operation of law, or by a statute describing him by name, or by his status or condition, or as a contractor in a particular firm, without affecting the parties not named. The contracts of makers and indorsers of promissory notes are treated, as they are in truth, as separate and several contracts. They may or may not be supported by the same consideration, but a joint action will not lie against them, although they may now by statute be sued together; but in such case the action is regarded for all the purposes of protecting the rights of parties, and is prosecuted as a several action against the several parties. The validity of the contract of indorsement does not necessarily depend upon the validity of the engagement of the maker. It is true, where both grow out of the same transaction, and depend upon the same consideration, if one is illegal both are necessarily so; but it does not follow, that because one is not in a situation to allege the illegality, the other shall be precluded. The law which prohibits the borrower, in this case, to allege usury is very direct in its terms, and simple in its provisions. "No corporation shall hereafter interpose the defence of usury."

Assignees and representatives of corporations, although not named, are within the spirit of the act, and therefore within its terms; and they are not permitted to avail themselves of a defence from which the corporations are excluded. (*Curtis* agt. *Leavitt*, 15 *N. Y. R.*, 296.)

Whether, under all circumstances, creditors and others claiming under a corporation should be within the prohibition, is not settled, and is not free from doubt, but need not be considered here. So, too, although the letter of the act merely forbids corporations from interposing the defence of usury, it has been very properly held that it necessarily takes from the corporation the right to assert the usury in any way, defensively, and in any way to vacate or set aside a contract, as well by affirmative action as by way of defence to an action on the contract. It takes from the corporation the objection of usury. (*Butterworth* agt. *O'Brien*, 16 *How. Pr. R.*, 503; *s. c.*, 28 *Barb.*, 187.) This being so, the language used by the learned judge of the court of appeals, in *Curtis* agt. *Leavitt*, was appropriate and expressive. The undertaking of a corporation founded upon a usurious consideration is, *quoad* the corporation and its receiver or assignee, as if no statute of usury existed. A statute is as no statute to one who is prohibited to use or claim the benefit of it. It is as a repealed. statute to him. His rights are not affected by it. Judge Comstock says (*p.* 85) : " My impression is that the act must be construed as a repeal of the statutes of usury, as to all contracts of corporations stipulating to pay inteest," &c.

This is doubtless true, but that does not extend necessarily to collateral contracts of others. Here we have the agreement for a loan usurious in itself, consummated by the borrower, and the absolute promise or contract of the corporation to pay, as to which it is said, and need not be decided, the statute of usury is repealed, and the collateral and conditional contract of the sureties, as to whom

the statute of usury is in full force. Judge BROWN (*p.* 154) better expresses my idea of the effect and operation of the statute, and refers to it as operating upon the condition of the artificial beings named, and thus, as to their incidentally affecting the contract, he says: "The condition of this class of beings becomes the same as if the usury laws never existed." The statute operates directly upon the person, and only indirectly and incidentally upon the contract. Construction has no place in respect to a statute or other instrument which is perfectly plain and easy to be understood, giving the words their ordinary and usual signification. The statute was passed under the pressure of the case of the *Dry Dock Bank* agt. *The American Life Insurance and Trust Company*, in which the plaintiff was exempted from the payment of a very large sum of money, loaned under a contract held to be usurious (3 *Comst.*, 344), and was not designed especially to give moneyed corporations the advantage over needy individuals, competing for loans in the money market.

It may have had that effect, but such was not its primary object; which was to hold corporations to their engagements, irrespective of the general policy of the usury laws, as affecting the contracts of individuals. The language chosen is well calculated to carry out the primary object of the act, and is not so general as to interfere with the usury laws, or to affect individuals. If the statute of 1850, by implication, repeals the usury laws, so far as contracts for loans to corporations are concerned, as is claimed, then a repeal of that act would not so restore the usury laws as to invalidate contracts made during its existence, by bringing them within the penalty imposed by the usury laws. A repeal of the act could not affect the contract, and yet my impression is, that a repeal of that act would place all contracts of corporations on the same footing with contracts made by individuals. The statute would preclude a corporation surety from interpo-

sing the defence of usury. Although the individual and principal debtor, not within the act, would not be estopped. It certainly cannot be claimed that all parties to a promissory note or bill of exchange, in which the name of a corporation is found as maker, drawer, indorser, or acceptor, are by the act of 1850 debarred from the protection of the *statutes* of usury.

It is supposed that there is some mysterious connection between the contracts of the maker and indorsers,. by means of the loan, which constitutes the consideration of both, by which the disabilities of the maker are transferred to the indorsers. But I am unable to see by what process. If the legislature had said, as they might, that the statutes of usury should not apply to contracts for the loan or forbearance of money to corporations, the case would be different, and the plaintiff's counsel would be right, but it is not so written, and we are not permitted to go beyond the statute. If such had been the substance of the act, then it would not have affected the liability of corporations upon contracts made in other states, and void by the usury laws of those states. Our statutes could not repeal foreign statutes, and they could have been pleaded in our courts.

But the statute does, in truth, as intended, said Judge Comstock, in *Curtis* agt. *Leavitt*, prohibit corporations from interposing in our courts the usury laws of other states and countries as a defence to their contracts, which shows that the statute operates not by way of a repeal of our statutes of usury, but simply upon the ground that the prohibition is personal. I do not suppose that it would make any difference if the action was against the defendants as joint borrowers with the railroad corporation, and upon a joint contract. But it is not so, and the contracts are as independent as if written on separate pieces of paper. Suppose the defendants had loaned their note to the railroad company, payable to bearer, and the company

without indorsement had sold it for less than its face, so that it would have been void for usury, would the fact that the loan was made to a corporation, bring the parties to the note within the provisions of the act of 1850, and exclude them from the benefit of the usury laws ?

Certainly not, as I think ; and if· not, then the fact that the corporation indorsed the note would not affect the makers; and to go one step further, the fact that the corporation borrowed the indorsement rather than the note of the individuals, would not vary the rights of the parties. The statute is (3 *R. S.*, 5*th ed.*, 73, § 5): "All bonds, bills, notes, assurances, conveyances, all other contracts and securities whatsoever, &c., whereupon and whereby there shall be reserved or taken a greater sum or value for the loan or forbearance of money, &c., than is prescribed by statute, shall be void." An indorsement by way of security is within the provision.

The note and indorsement received vitality by the transfer to secure the loan, and depend upon it for a consideration ; and if that is illegal the contract fails. It is no answer to the plea of usury, when interposed by the indorser, to say that the maker is estopped, or by law precluded from alleging the defence. When the maker interposes the defence the estoppel may be replied.

It is as to the contract of the corporation that the statute of usury is *quasi* repealed, not as to the individual indorser. It is only by a construction not warranted by the language of the act, nor required by any necessity, nor necessary to give full effect to the statute and the intent of the legislature, as expressed in it, that it can be claimed that the loan to a corporation, and all securities connected with it, are made valid by being taken out of the operation of the statutes of usury by the act of 1850, and I am not prepared to go that length.

We are cited to two cases, *Bork* agt. *Seaman* (24 *Penn. R.*, 435), and *The Market Bank of Troy* agt. *Smith*, decided

by the United States district court for Wisconsin, and reported in the *American Law Register for September*, 1859, in which the same construction was given to the statute, and with the reasoning I am entirely satisfied. Perhaps a shorter answer to the defence interposed in those states, would have been that the laws of this state affecting the remedy had no extra territorial force, and such would have been consistent with the view taken of the statute.

I think the learned justice erred in his application of the statute at the circuit, and that the judgment must be reversed, and a new trial granted, costs to abide the event.