By the Court.—Speir, J.
The action is brought against the defendants as makers and indorsers of a promissory note for three thousand dollars, purchased by the Atlantic National Bank, and which, on its failure, came into the hands of the plaintiff as receiver.
The note was made by the New York Laundry Manufactory Company, a New York corporation, and indorsed by the other defendants in blank, and was purchased by the bank in good faith, believing the same was business paper.
The answer admits the allegations of the complaint, and sets up, first, that the note was an accommodation note, made by the corporation and indorsed by the defendant Grill, for the accommodation of the other de *281 fendant Clapp, and that the bank had notice of these facts; and second, that the defendant Clapp delivered and transferred the note and indorsement to the bank at a usurious rate.
The action was tried before Mr. Justice Sedgwick, without a jury, whose findings appear in the case. The defendants except to the conclusions of law that they are liable on the facts found. The judge, upon the facts, decided that the plaintiff is entitled to judgment against all the defendants for the amount of the note. The defendants appeal from the judgment.
The first defense in the answer, that the paper was only accommodation paper, would only be available to the corporation, and the defendant Grill. But the court has found that the purchase was made in good faith, and without notice. The second defense is usury, and is the only question to be considered.
The statute against usury provides that no person or corporation shall take any greater sum for the loan of money that at the rate of seven per centum per annum (§ 2). It also provides (§ 5), that all contracts whatsoever (except respondentia and bottomry bonds), whereupon and whereby there shall be taken or secured a greater rate of interest, shall be void (1 Edm. Rev. .Stat. 725, 726.)
It is well settled that an accommodation note is not a valid instrument, until it is negotiated, and does not acquire validity until delivered to a bona fide holder for a valuable consideration. If the note be delivered or transferred for an illegal consideration, as if it be discounted at a usurious rate of interest, the note is absolutely void."
The statute of 1850 {Laws of 1850, ch. 172, p. 334), is invoked by the plaintiff to save the note from the .consequences of the above legal propositions. The statute provides, “No corporation shall hereafter interpose the defense of usury, in any action.”
*282 It is claimed by the plaintiff, that by the operation of this statute, the defendants are prohibited from assailing the title and control of this note in the plaintiff, on the ground that there was usury in the transaction, by which a title and control were .acquired by the plaintiff. In short, that the defendants are prevented from setting up usury as a defense under the act.
The language of the statute has been very liberally construed in passing under review of the many judicial decisions since its enactment. The courts have been gradually enlarging the meaning of the one word “ defense,” which seems to be the key of legal construction of this simple sentence of the statute. This was done to carry out the policy the legislature had in view, and to avoid the practical absurdities arising chiefly from the different positions of a corporation as party plaintiff, or defendant. These several adjudications, however, had- direct reference to the individual cases decided, depending on the facts presented in each case for adjudication. As the questions of law arising on the facts in this case, do not appear to have received judicial examination, it may be useful briefly to review the decisions heretofore had on the subject.
In the first and leading cases so thoroughly and ably examined by the many learned and distinguished judges then presiding"(Curtis v. Leavitt, 15 N. Y. 151), the precise point decided was, that the prohibition from setting up usury, was retrospective.
In the case of Southern Life & Trust Co. v. Packer, (17 Id. 51), Pratt, J., it was decided that the prohibition from interposing the defense of usury is' riot only retrospective, but applies to foreign corporations litigating in the courts.in this State.
The case of Butterworth v. O’Brien (23 Id. 275, Davies and James, JJ.), decides that the prohibition - deprives the corporation of the right to recover bade-money paid by them in excess of legal interest.
*283 In Rosa v. Butterfield (33 Id. 665), Davis, J., the corporation gave its note, containing a stipulation to pay interest at the rate of twelve per cent, per annum semi-annually. The indorsement on the note guaranteed the payment and collection of the note at all times, and unconditionally to the amount of the principal, and interest at the rate of seven per cent, only.
In an action by the holder of the paper, it was decided that the defense of usury was „ unavailing to the corporation on the loan of money, and also to the guarantors of the note.
The case of Belmont Branch Bank v. Hoge (35 Id. 65), Porter, J., decides that the provisions of the act of 1850 operate pro tanto as a repeal of the statute prohibiting usury, so far as they were applicable to stipulations for a rate of interest exceeding 7 per cent, where a corporation is the borrower.
In Merchants’ Exchange Bank v. Commercial Warehouse Co. (49 Id. 635), Folger, J., the action was brought for the conversion of a quantity of -tobacco, the warehouse receipts for which had been pledged with the defendants as security for loans made to one Oakley by the defendants, which the complaint alleged to be usurious. The court decides that the act of 1850, prohibiting corporations interposing the defense of usury, only prevents the avoidance of its own contract on the ground of usury; that it does not apply to a case where the corporation succeeds to the rights of the party who might avail himself of the provisions of the usury laws.
In Hungerford Bank v. Potsdam & Watertown R. R. Co. (10 Abb. Pr. 24), the loan was made by the plaintiffs to the defendants on their note, whereby the plaintiffs received more than seven per cent, per annum. The other defendants were accommodation indorsers. The general term of the fifth district held *284 that the contract of the indorsers was independent of that of the maker, and the loan having been made with the maker, the indorsers, as defendants, could avail themselves of the plea of usury.. Mr. Justice Mason, at the special term (9 Abb. Pr. 124), had held in the same case that contracts of corporations were no longer invalidated by usury ; and that an accommodation indorser for a corporation upon a usurious note, could not set up his defense to invalidate his contract. This decision was reversed by the general term.
The facts in the case under consideration resemble more nearly those in the last case than any I have examined, and I think must be disposed upon the same legal principles. ; The ground is that the purpose of the act was to prevent the avoidance by a corporation of its own contract, for the reason that it was made in contravention of the laws against usury, that the contracts of makers and indorsers of promissory notes, are treated in law, as they are in fact, as separate and several contracts. These contracts may or may not be supported by the same consideration. The validity of the contract' of indorsement-does not necessarily depend upon the validity of the engagement of the maker; and it does not follow because one is in a situation to allege the illegality, the other shall be precluded.
The defendant Clapp is in no sense a stranger to the contract of loan, so as to preclude him from setting up the defense of usury, when sued upon his indorsement ; or from seeking affirmative relief by action on the ground of usury. He was a party to, and executed it with the plaintiff. The defendants Clapp and Gill are certainly not strangers to their own contract of indorsement. They, and they only, can allege the invalidity of their contract (Dix v. Van Wyck, 2 Hill, 522; Green v. Moore, 4 Barb. 332). They are not joint contractors with the maker. The contract of the one *285 is conditional, while the other is absolute. Each party may be severally estopped by his own acts from setting up a defense, true in fact, and common to both, and which would be fatal, while the other party may avail himself of it (McKnight v. Wheeler, 6 Hill, 492; Holmes v. Williams, 10 Paige, 326).
The making of the note* by the incorporation, and the transfer of it to the indorsers, are not affected by the act of 1850. There is nothing on the face of the note, or in the transfer of it. to the indorsers, which can be said to be usurious. It had no legal inception until it was delivered to the bank by the defendant, Clapp. Ho liability attached to any of the defendants until the note became operative in the hands of the bank, when the transaction between the defendant Clapp and the bank was completed. That transaction was usurious. It was considered as settled law, prior to the passage of the act of 1850, that the discount or purchase of an indorsed note, having no previous legal inception or validity, at a greater rate of interest than seven per cent, made the note void for usury.
Bosworth j., in Belmont Branch Bank v. Hoge, supra, says, “The contract of an accommodation indorser is his own contract alone, and not that of his principal. The separate contract of the accommodation indorser, or other' surety, whether contemporaneous with or subsequent to that made by his principal, may be void, as contravening the usury law ; while that of his principal is valid, as not reserving more than seven per cent, or by favor of some act making it legal, though a greater interest was received.” Mr. Justice Mason admits in.his opinion in (9 Abd. Pr. 124) “that if the accommodation indorsers are to be deemed borrowers from the plaintiff, and to have an independent contract with the plaintiffs, or if they are to be held as actual parties to the contract of loan, then they could interpose the defense of usury.
*286 The plaintiff cites the case: of Eosa ®. Butterfield, as an authority that defendants would have been liable if they had indorsed a guaranty on the note, making themselves sureties, and not indorsers, claiming that the obligation of an indorser rests upon the same foundation, except that he is a conditional surety.' This does not seem to meet the point. In the case relied upon, the corporation’s own note or contract was, by itself, impugned as vicious for usury in it, and the security on which the usurious loan was based, was infected with a vice that destroyed the whole transaction, while in this case, the corporation note was free from any such taint.
In the latest decision on this subject, the learned justice (Folger) (Merchants’ Exchange FT. Bank v. Com. Warehouse Co., supra.), “says there are doubtless ' expressions in some of the cases which convey the idea of a legislative intention in passing the act to repeal the usury laws, so,farc as corporations are concerned. But the force of reasoning in them as a whole, and the leaning of the facts therein, are to the result that the purpose of the act was to prevent the avoidance by a corporation of its own contract of the laws against usury.” And again : “ The facts of the cases, and the questions raised in them, did not carry the binding force of these authorities further than to the refusal to the corporation of the benefit of the usury laws, when its own contract was for usury in it, by itself, impugned as vicious.”
To say that the indorsers are privies to the note made by the maker, and are therefore liable, does not meet the question. For the maker of this note has done nothing whereby the statute has any application whatever. It does not apply to a contract, unless it be such that the defense of usury could be interposed under it. In short, it must be a contract made by the corporation, usurious by itself, and which the corpo *287 ration, or parties privy to the usury by which it is infected, cannot avoid, independently of the statute, either by defense or attack. Any other construction would make the act applicable to all classes other than the corporation, however innocent the latter might be of any act or intention of violating the usury laws.
We think the judgment must be reversed, a new trial ordered, with costs to the appelant, to abide the event.
Van Vorst, J., concurred.