Thurman, J.
This is a writ of error to the Huron common pleas,, reserved for decision here. The original action was assumpsit, the declaration containing a count on a promissory note made by the plaintiffs in error and one Ronse to the Bank of Norwalk and the common counts. Plea, the general issue, with notice of special matter in bar. The cause was submitted to the court, who found for Finn, the plaintiff below, and after overruling a motion for a. new trial made by Busby and Welsh, gave judgment; to reverse which this writ is prosecuted. The errors assigned are, in substance, that the claim on which the court rendered judgment was usurious- and void. On the trial a bill of exceptions was taken, which is in these words:
“John R. Finn, Trustee of the late stockholders of the Bank of Norwalk v. George H. Busby and Madison W. Welsh. *Be it remembered, that at the trial of this cause at the March term,, a. d., 1849, of said court, the plaintiff to maintain the issue gave in evidence the cognovit and proof of notice and rested. Thereupon the defendants gave in evidence the record of the judgment in Marion county, hereto attached, marked A, and also the statement of Mr. Finn, marked B, and rested. The plaintiff, the testimony of C. D. Boalt, hereto attached, marked G. The record from Wood county, marked D. The record of suit at law in Marion county,, marked E, and the record of chancery case from Marion county, marked F. Upon which testimony the court found that the de *354 fendant did assume and promise, and assessed the plaintiff’s damages at $2,624.26. Thereupon the defendant made his motion for a new trial, for the reasons therein assigned, which motion the court ■overruled. To which rulings and findings of the court the defendants excepted, and prayed the court to sign and seal this their bill of exceptions, which is accordingly done, and on their motion the same is made a part of the record in this case.
“ E. B. Sadler, President Judge, [seal.]
“ E. Sears, [seal.]
“ E. Wickham. [seal.]
“ E. Stewart, [seal.] ”
Among the papers before us are certain papers marked, respectively, A, B, C, D, E, E, and H, but neither of them is, in any way, attached to the bill of exceptions, nor does either of them bear any file mark of any court, nor are they, or either of them, referred to in the pleadings, or verified, or even alluded to in any return, or ■certificate, of the clerk of the common pleas—in a word, we have nothing whatever from which we can properly take notice that these papers are the same papers mentioned in the bill of exceptions. We do not mean to say that it is indispensable to copy into, or actually attach to, a bill of exceptions, every paper making part of it, though Hicks v. Person, 19 Ohio, 446, seems to require this. Such a description may be given of an exhibit as to * leave no doubt of its identity when found among the papers; but, on the ■other hand, the description may be so loose, that of a number of papers each one will satisfy it just as well as any other. Thus, in the present case, the bill states that “ the defendants gave in evidence the record of the judgment in Marion county hereto attached, marked A,” but no such record is attached, or marked as filed, or mentioned in the pleadings, or referred to in any return or certificate of the clerk of the court. It is therefore manifest, that any record of any judgment of any court in Marion county, and between any parties, satisfies the description in the bill of exceptions, provided it is marked A. The same thing may be said of the other exhibits. Any statement of Mr. .Finn, marked B; any testimony •of C. D. Boalt, marked C; any record from Wood county, marked X); any record of any law-suit in Marion county, marked E; or ■.any record of any chancery case in that county, marked E, will *355 come within the description in the bill of exceptions; and one just as well as another.
In Hicks v. Person, above cited, the exhibits, which it was intended should form parts of the bill, were referred to just as in the present case, and were, save one, among the papers of the case in error ; but the court held that they could not be regarded as parts ■of the bill.
The chief justice, delivering the opinion of the court, said : “Before this court can determine whether a verdict in the court of common pleas is against evidence, we must have not a part only, but the whole evidence which was before the jury, on the trial, and this must be brought before us by a bill of exceptions, made part ■of the record. I say made part of the record. For it is only upon inspection of the record that a court of errors acts. All the evidence before the jury must be embodied in or made part of the bill of exceptions. It will not do, as is sometimes attempted to be done, to refer to the records of courts, or records of deeds, an attempt to make them parts of bills of exceptions. It will not do to refer *to depositions on file by the names of the deponents, or by artificial marks upon the depositions themselves, without something beyond this. They must be attached to or made part •of the bill of exceptions, so that when a record of the case shall be ■made, they can be introduced into that record as constituting a part of the case. Such preparation of bills of exceptions may be attended with much labor on the part of counsel, and with much •expense on the part of clients, and probably the labor and expense will be avoided, except where there is palpable ground for the belief that wrong and injustice have been done. This strictness is not required where the motion for a new trial is based upon an error committed by the court in the progress of the trial, but only where the complaint is that the verdict was against evidence. In, such case we must have all the evidence before us.”
So in Wells v. Martin & Co., decided at the present term, we held that a deposition was not sufficiently made a part of the bill of exceptions by a reference to it which merely stated the deponent’s name.
As to the paper marked H, which purports to be a copy of a cognovit, we see no pretense for calling it a part of the bill. The bill simply states that the plaintiff below “gave in evidence the cognovit and proof of notice, and rested.” What, cognovit? The *356 pleadings say nothing of such an instrument, and the bill does not refer to it by even an artificial mark, or speak of it as on file, or give its date, or say who were the parties to it. This defect in the bill seems to have been subsequently discovered; for, after the present writ of error had been sued out and was pending in the-court in bank, Busby & Welsh, at October term, 1851, of Huron common pleas, procured the latter court to make the following-order :
“ October term, 1851—to wit, October 24,1851.
“Assumpsit. John R. Finn, trustee of the late stockholders of the Bank of Norwalk, v. George H. Busby and Madison W. Welsh. *“ Huron common pleas. Judgment rendered at the March term, A. D. 1849, and taken to the supremo court on error, and reserved for decision in the court in bank.”
“ On motion to the court, and it appearing that this court, in. signing the bill of exceptions in said case, intended to make the cognovit filed in said case described in the declaration, and now remaining among the papers in the same, and marked H, a part of said bill of exceptions at the time the said bill of exceptions was signed and allowed. It is therefore ordered that said cognovit be hereby made a part of said bill of exceptions in the above entitled case, and that this order be entered as of the said March term, a. d. 1849, of this court, and certified to the court in bank as a part of said bill of exceptions.”
This is certainly a curiosity in the history of judicial proceed»ings. The statute requires a bill of exceptions to be signed and sealed at the term at which the exception is taken, and it can not be done afterward. 43 Ohio L. 80 ; Hicks v. Person, 19 Ohio, 426. But if the plan here attempted is permissible, signing and sealing are unnecessary, and a mere journal entry will answer for a bill of exceptions, and instead of the bill being perfected at the term in which the exception is taken, as is required by the statute, it may be completed at any subsequent term, even after the original papers are in the court of errors, by a nunc pro tunc order., and that made by different judges from those who signed and sealed the bill. Such a proceeding is wholly unauthorized and the order in question is a nullity. And here we may remark, as showing how improvidently the order was granted, that it speaks of the cognovit as an instrument “ described in the declaration,” when in truth the declaration makes no mention whatever of it.
*357 It is clear, then, that we can not look at the paper marked H, and consequently we have nothing before us to show the contents of the cognovit mentioned in the bill of exceptions. In other words, we have not all the evidence given on the trial in the common pleas, if, indeed, we have any of it, in a *form that we •can notice it. And here it is to be observed that the cognovit was .a very material piece of testimony; for upon it, with proof of notice, the plaintiff below rested in chief, and no question appears to have been made but that he had thereby established, prima facie, a right to recover.
The errors assigned amount in substance to this only, that the finding of the court was against the evidence. But as the evidence is not properly before us we can not say that the finding was erroneous.
We may add, however, that if the exhibits in question were all sufficiently made parts of the bill of exceptions, we should yet affirm the judgment of the common pleas. For we are unanimously of opinion that the claim upon which it was rendered was not void.
It is, perhaps, unnecessary for us to give, in detail, the reasons that bring us to this conclusion. There is not, so far as we see, a • controverted question of law in the case, and it can seldom be of use to report decisions upon mere questions of fact, which, however interesting to the parties, are of no moment to the public, and furnish no precedents to the courts or the bar. That the bank of Norwalk was restricted by its charter to six per cent, per annum, in advance, upon its loans ; that any contract upon which it knowingly took interest at a greater rate was void ; that it had no right to take interest under the name of attorney’s fees for collection ; that a mistake of law upon its part would not exempt it from the consequences of a taking of illegal interest, are projiositions that can not be, and are not, gainsaid. On the other hand, it will not be protended that an error in calculation, an accidental omission of credit, or a transfer, by mistake, of an item from one account to another, will make a security usurious and void, there being no intent to exact or take unlawful interest. And it is equally well settled that a contract untainted by usury when made, will not become void by a subsequent receipt of usurious interest upon it. “ There are two cardinal rules in the doctrine of usury,” (said Mr. Justice Thompson, Nichols v. Pearson, 7 Pet. 109), “which we think must be regarded as the common Aplace to which all *358 reasoning and adjudication upon the subject should be referred. The first is, that to constitute usury there must be a loan in contemplation by the parties ; and the second, that a contract, which,, in its inception, is unaffected by usury, can never be invalidated by any subsequent usurious transaction.”
Now, in the case under consideration, it is not pretended that the-debt originally due the bank was tainted by usury. The material facts are, that on December 1, 1836, one Alvin 0. Priest procured a note for $8,000, made by himself, and Welsh, Bowen, and Busby, as his sureties, and payable at six months, to be discounted by the-bank. No attempt was made to reserve interest at a greater rate than six per cent, per annum. Indeed, owing to a mistake, less-than that rate was reserved. In January, 1837, he executed two-mortgages, one of land in Marion, and the other of land in Wood-county, to C. D. Boalt, as trustee for the bank and his said sureties, to secure payment of said note, and of another note for $300 due the bank; and the Wood county mortgage was also conditioned that he “should pay all costs and charges of what nature soever to-which the bank might be subjected in collecting said debts.” The note matured June. 4, 1837, and was not paid, but Shortly after-wards Priest made some payments upon it. In September following it was placed in the hands of Boalt, a lawyer, for collection. On the 19th of that month he took, as a collateral security, Priest’s; cognovit for $5,650.27. This sum consisted of the balance then computed to be due on said $8,000 note, together with $3.20, a balance of an old account due by Priest, and $137.80, being two and a half per cent, attorney’s fees for collection. In computing the amount due on the note, several errors in the calculation of interest accidentally occurred, resulting in an excess of $1.72 in favor of the-bank.
On February 26, 1838, judgment was entered on this cognovit. On the next day Bowen, Busby, and Welsh, gave their cognovit, as-collateral, for the amount of the judgment, upon which latter cognovit judgment was entered against them, *May 21, 1838.. On February 27, 1838, Boalt filed a bill of foreclosure on the-Marion county mortgage, and in September following obtained a decree, under which $2,922 were subsequently made. On April 24, 1838, he filed a bill of foreclosure on the Wood county mortgage.
The bill specifically sets forth the judgment of February 26,, *359 1838, against Priest, for §5,798.52, and that this sum “ included the sum of §137.80, due the said Boalt for prosecuting said claims, and for which said bank is liable to said Boalt, the same being the amount agreed on between said Priest and Boalt, and taxed at the usual rate of two and one-half per cent, on the amount due from said Priest to said bank, for which amount the said bank now holds the cognovit of the indorsers to be entered at the next term of the Marion common pleas.”
“ That this mortgage was dated January 11, 1837, and was conditioned that Priest should pay the bank said §8,000 note, and said sum of §300, and should pay all costs and charges of prosecution, and keep said securities harmless in the premises.” And it is further charged in the bill “that the mortgage had become absolute;” “ that there remained due the complainant the several sums above set forth, with interest and costs aforesaid, and that said bank has-been obliged to, and has incurred charges for collection, in manner above set forth, and agreed as aforesaid to be paid by the said Priest in and by the condition of said mortgage, and fixed in account as aforesaid, and included in said judgment.” “ That said land was conveyed to said Boalt in trust for the benefit of said bank, and the said Welsh, Busby, and Bowen, for their [indemnity?] individually against said debt.” Priest, Welsh, Busby, and Bowen are made parties, “ and full and explicit answers to all and singular the premises ” prayed for.
Answers of Priest and wife, Welsh, Busby, and Bowen were filed June 25th, 1838 (on oath, except Bowen’s), and they admit “and say it is true that said Priest is indebted to the bank in the sum of §5,798.52, debt and damages, together with costs of suit taxed at §7.12, now in judgment in *lhe common pleas of Marion county, for which the said Boalt has a lien on the mortgaged premises described in the bill, together with interest.”
At the October term of the Wood common pleas (October 18), the cause was referred to Purdy, as special master, who, among other things, reported, first, that the mortgages were severally given by Priest and wife, as set forth in the bill-of complainants, and that there was due to complainants on this judgment, secured by their mortgage as set forth in the bill, the sum of §5,798.52, damages, and §8.50, costs, and interest from the 26th day of February, 1838, subject to be reduced by any sum paid on said judgment at law in Marion common pleas. This report was confirmed at the *360 samo term, finding due to the bank, including interest and costs on the judgment in Marion county, the sum of $6,029.26. A decretal order was accordingly issued, the premises mortgaged offered for sale on the 26fh of February, 1839, appraised at $2,000, and bid in by Bowen, Busby, and Welsh for $1,334. Sale confirmed March 28, 1839, in Wood common pleas.
Of the proceeds of the sale ($1,334), $910.98 were absorbed by prior liens and costs, leaving $423.02 to be applied to the claim of the bank, for which Boalt, on behalf of the bank, but without receiving the money, gave Busby a receipt, which was used in making payment to the master. In both the Marion and Wood county decrees, the amounts found due include the alleged usurious items, and the amounts are found to be due by Bowen, Busby, and Welsh, .as well as by Priest. On April 21, 1839, a settlement was made between Boalt, as attorney as. aforesaid, and said sureties, and they gave their note at six months for $2,883.56, the amount computed to be due at the date of said settlement, and paid the interest for the time the note had to run. This note was renewed six times, until July 15, 1842, when Bowen individually assumed one-third of it, for a portion of which he procured a discount, which, after several renewals, was finally paid January 15, 1844. On the same 15th of July, *Busby and Welsh, with Eouse as their surety, made their note for the other two-thirds, which was discounted by the bank, and several times renewed, until April 13, 1843, when the note on which the suit was brought was made and discounted.
At March term, 1845, of Marion common pleas, the judgment against Bowen, Busby, and Welsh, was set aside, and upon a trial ■subsequently had, a verdict and judgment were rendered for the defendants, which was affirmed on error in the supreme court.
It appears from Boalt’s testimony, that his fees aforesaid, were paid in April, 1839, four years before the note in question was given. There is also reason to believe that in the settlement of 1839, there was an omission to credit Priest with $75 previously paid by him, but there is no reason to suppose that the omission was designed, or was anything but an accident. It is also shown that the bank had adopted a rule in the following words:
“ Where expenses are incurred by the bank, from the non-payment of debts, either in attorney’s fees, or otherwise, no person *361 whose name appears on such paper, will be entitled to credit until such expenses are adjusted. Debts placed in the hands of an attorney for collection will not be withdrawn until his charges are paid but there is nothing to show that this rule was used to exact the fees in question. And it is clearly proved that the fees all went to Boalt. No part of them was reserved by the bank—nor is there any reason to believe that any of the transactions between the parties was a shift or device to obtain usurious interest. How, then, stands the case ? Certain errors and omissions occurred in the calculations, but being accidental they did not taint the security with usury—and as to the $75 credit that was omitted, the money •was paid long before the note in question was given. To have obtained the benefit of that credit, it was necessary for the defend- . ants, by a notice attached to their plea, to set up the fact as showing a partial want of ^consideration. Not having done so,. they lost the opportunity to make the deduction.
As to the alleged compounding of interest, by means of the rests made at the several settlements, we find nothing illegal in it. The debt was overdue when the settlements were made, and we are not •aware of any law that prevents a creditor and debtor, by mutual agreement, from turning interest that has accrued and become due into principal.
This leaves nothing to be considered but the attorney’s fees. .Now, although the bank had no right to exact these fees, yet there was nothing immoral in Priest or his sureties agreeing to pay them, especially as Boalt, who was to receive them, had, by taking the mortgages to secure the bank and indemnify the sureties, undertaken •a duty for the immediate benefit and protection of the sureties, and which involved him in both labor and expense.
The amount of the fees was agreed upon by Priest and Boalt, and •the former confessed judgment for an amount which included them. That judgment has never been set aside, and it is perfectly clear that Priest can not collaterally, if at all, assail it. It estops him to deny that he did not, at the date of the judgment, owe that amount. In Bearce v. Barston, 9 Mass. 48, it was held that “ where the party liable upon a usurious contract will not avail himself of the remedy provided by the statute for the purpose of avoiding it; where he voluntarily discharges it, or suffers a judgment to be recovered upon it, or makes it the consideration of a contract entirely new, ás being with a third person not a party to the original contract, orto *362 the usury paid or reserved upon it, or as combining other parties and considerations, and not being a contrivance to evade the statute, then the provision no longer applies. Money paid upon a usurious contract is not to be recovered back ; a judgment upon a usurious contract is not for that objection to be avoided—and when made the consideration for another contract, it is neither an illegal nor a void consideration.”
*Now apply these principles to the case at bar. Priest agreed to pay the fees, and confessed a judgment including them. His sureties afterwards gave their cognovit for the amount of the judgment. The calculation indorsed on the cognovit when they executed it shewed that the fees were included. They subsequently gave new notes which were renewed from time to time, after payments made, until the note in question was finally given for the balance remaining due. When this note was given the judgment against them on their cognovit was in full force, and they were then clearly estopped by it to deny, at least in a collateral proceeding, the amount due. Under these circumstances it would, possibly, not be going too far to say, that although that judgment was subsequently sot aside, yet as the judgment against Priest remains in force, the makers of the note in question can not impeach it for' usury taken before the rendition of the latter judgment. It is unnecessary, however, for us to so decide; for we find that the fees-were paid by Priest, and as there was nothing immoral or wrong in the payment, as they had been well earned by Boalt, as no part of them was reserved by the bank, and as the transaction was not a. shift to obtain illegal interest, we see no right of the plaintiffs in-error to complain.
There is another view of the case that is equally conclusive. The- ■ mortgages to Boalt were for the benefit of the bank and Priest’s-sureties. By them Boalt was made a trustee for all the parties, and' the Wood county mortgage provided for the payment of the fees. The plaintiffs in error accepted the benefit of this trust. In their answers under oath to the Wood county bill, they admitted the fees-to be due, and that they were bound for them. The master so reported, and they made no exception to the report. A decree was-rendered accordingly, and they, with Bowen, the other surety, bought the land sold under it and paid to the master the amount, ordered to be paid to the bank by a receipt which they obtained-from Boalt without having paid the money, thus depriving the bank *363 of the security of the land, and leaving *their own personal liability to the bank in lieu of it. In a word, the foreclosure of the Wood county mortgage resulted to their benefit alone. Now it seems to us clear that, having thus availed themselves of the trust created in their favor, they can not be permitted to gainsay the legality of the objects of that trust. It is well settled that if a debtor make an assignment to' pay debts, some of which are usurious, no creditor or beneficiary of the trust, who comes in under it, can object to the payment of such usurious debts. So it was expressly ruled in Pratt v. Adams, 7 Paige, 615, and in Green v. Morse, 4 Barb. 332, and such is undoubtedly the law.
In no aspect in which we can view the case did the common pleas err, and its judgment must, therefore, be afiirmed.

Judgment affirmed.